IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHERYL ANNE BELL
1788 Mitchells Chapel Rd.
Pittsboro, NC 27312

    Plaintiff,

v.

CARROLL COUNTY GENERAL
HOSPITAL SOUTH CARROLL MEDICAL
CENTER, INC. a/k/a CARROLL COUNTY
GENERAL HOSPITAL, INC. d/b/a
CARROLL HOSPITAL CENTER
200 Memorial Avenue
Westminster, MD 21157

    Serve on: Resident Agent
            Charles O. Fisher, Esq.
            179 E. Main Street
            Westminster, MD 21157

and

BASSAM Y. BARAKAT, M.D.,
Individually and/or as Agent, Servant and/or
Employee of CARROLL COUNTY
GENERAL HOSPITAL SOUTH
CARROLL MEDICAL CENTER, INC.
a/k/a CARROLL COUNTY GENERAL
HOSPITAL, INC. d/b/a CARROLL
HOSPITAL CENTER
200 Memorial Avenue
Westminster, MD 21157

    Serve on: Resident Agent
            Charles O. Fisher, Esq.
            179 E. Main Street
            Westminster, MD 21157

    Defendants.

Civil Action No.:_____

**JURY TRIAL DEMANDED**

**COMPLAINT**

NOW COMES the Plaintiff, Cheryl Anne Bell (hereinafter "Plaintiff") by and through her attorney, Robert E. Joyce, and sue the above-captioned Defendants and, in support of her Complaint, she alleges as follows:

1. Jurisdiction is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C §1332 in that the controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs and is between citizens of different states.

2. The amount in controversy is in excess of Twenty Five Thousand ($25,000.00) and thereby exceeds the limits of concurrent jurisdiction pursuant to Courts and Judicial Proceedings §3-2A-02(a)(1).

3. This is a unilateral waiver of compulsory arbitration from the Health Claims Alternative Dispute Resolution Office of Maryland pursuant to Courts and Judicial Proceedings §3-2A-06 B (attached hereto as Exhibit "A" is a copy of the Waiver of Arbitration).

4. At all times relevant to this claim, Defendant Carroll County General Hospital South Carroll Medical Center, Inc a/k/a Carroll County General Hospital, Inc. d/b/a Carroll Hospital Center (hereinafter referred to as "Defendant Hospital") is/was a corporation, professional association and/or entity organized under the laws of the State of Maryland and licensed to practice medicine through their agents, servants and employees and represented to the public and the Plaintiff that it possessed the degree of skill, knowledge, care, diligence and standard of medical care ordinarily possessed by reasonably prudent hospitals, professional associations and/or entities acting under the same or similar circumstances. Defendant Hospital, through its agents, servants and/or employees owed a duty to Plaintiff to exercise the degree of

2

knowledge, care, skill and judgment ordinarily exercised by reasonably prudent and competent hospitals acting in the same or similar circumstances in treating and caring for Plaintiff.

5. At all times relevant to this claim, Defendant Bassam Y. Barakat, M.D. (hereinafter referred to as "Defendant Barakat") is/was an obstetrician and gynecologist licensed to practice medicine in the State of Maryland and was acting individually and/or as an agent, servant and/or employee of Defendant Hospital. At all times relevant to this Claim, Defendant Barakat represented to the public and the Plaintiff that he possessed the degree of skill, knowledge, care, diligence and standard of medical care ordinarily possessed by reasonably prudent obstetricians and/or gynecologists acting under the same or similar circumstances. Defendant Barakat owed a duty to Plaintiff to exercise the degree of knowledge, care, skill and judgment ordinarily exercised by reasonably prudent and competent obstetricians and gynecologists acting in the same or similar circumstances in treating and caring for Plaintiff.

6. That at all times relevant to this claim the above-named health care provider, through its actual and/or apparent agents, servants and/or employees, undertook to render care and treatment to the Plaintiff and it therefore became the duty of the above named health care provider and/or its actual and/or apparent agents, servants and/or employees to exercise that degree of care, skill and judgment exercised by reasonably prudent and competent facilities, corporations, health care providers and assistants in treating and caring for Plaintiff in the same and/or similar circumstances.

7. Upon information and belief, Defendant employed or contracted as the principal, the services of gynecologists, obstetricians, physician assistants and others who rendered care and treatment to the Plaintiff as described herein and therefore is liable under the doctrine of respondeat superior for any negligent acts or omissions committed by its employees,

3

agents or servants in the treatment and/or failure to treat Plaintiff.

8. On or about October 6, 2004, at approximately 10:50 a.m. Plaintiff presented to the emergency department of the Defendant Hospital complaining of severe abdominal pain with a 24 hour history of moderate nausea and blood-tinged diarrhea. The abdominal pain was noted to occur even when she breathed.

9. Plaintiff was evaluated by emergency department personnel who ordered a pelvic ultrasound to rule out ovarian torsion, a pregnancy test and attempted a pelvic exam. Plaintiff was "unable to complete exam - [complained of] too much pain." Plaintiff was administered intravenous pain medication, including Demerol, to relieve the pain.

10. The pregnancy test was positive with an HCG of 4000. The pelvic ultrasound revealed a "3cm left ovarian cyst" and the report noted the positive pregnancy test. The radiologist noted in the differential that "early age of gestation versus ectopic pregnancy to be excluded" via clinical exam, repeat pelvic ultrasound and serial HCG. The emergency department physicians requested an evaluation by the house OB/GYN on duty.

11. At approximately 2:15 p.m. Plaintiff was examined by Defendant Barakat. Defendant noted mild abdominal tenderness on palpation and "early pregnancy." Instead of treating Plaintiff for an ectopic pregnancy, Defendant Barakat instead attributed her symptoms with a "possible inflammatory bowel disease" due to the adnexae being negative on palpation. However, Defendant Barakat did note ectopic pregnancy as part of his differential and instructed the Plaintiff to "follow up [with] own clinic [Kaiser] for repeat sono[gram], BHCG...ectopic warnings discussed with patient." The Plaintiff was summarily discharged by Defendant Barakat from Defendant Hospital.

12. Overnight the pain became excruciating and the bleeding continued.

4

Plaintiff was assisted by her mother to the emergency department at Sinai Hospital of Baltimore and was admitted at approximately 4:30 p.m. on October 7, 2004 where she was diagnosed with a ruptured ectopic pregnancy. Her abdomen was distended and she was found to be hemodynamically unstable with pain radiating into her back and shoulders. Her HGC had dropped to 2030. A pelvic exam by the staff OB/GYN revealed a left adenexal cyst. A sonogram was performed which revealed hemoperitoneum in the right lower abdomen with free fluid and fluid filled bowel in the right paracolic gutter on the ascending colon. The left ovary was noted to have a 2.1 x 1.8 cm cyst, suspected to be a corpus luteum cyst. An emergency exploratory laparotomy was performed requiring a left partial salpingectomy and an intraoperative blood transfusion with four (4) units of packed red blood cells was required to attempt to replace the blood which had been bled out into the peritoneum.

13. Postoperatively on October 8, 2004, due to the massive blood loss from the ruptured ectopic pregnancy, Plaintiff suffered a massive hypoxic episode requiring intubation and as a result developed an adult acute respiratory distress syndrome and lost a fallopian tube as a result of the rupture. She was hospitalized for seven (7) days in order to stabilize her vital signs and suffered great emotional distress and incurred medical and other expenses.

14. As a result of the negligence of the Defendant in failing to adequately or emergently treat Plaintiff, Plaintiff's condition worsened causing a ruptured ectopic pregnancy, massive hemorrhaging into her peritoneum, acute respiratory distress disorder and a hypoxic episode which required a lengthy, expensive and painful recovery period In addition, she was unable to work for a long period of time causing her to lose her employment and wages. Furthermore, she endured extreme and unremitting conscious pain and suffering, permanent scarring and loss of a normal lifestyle. Had Defendants treated the ectopic pregnancy in a

5

timely fashion, Plaintiff would have recovered without any significant disability or damage.

## COUNT I - NEGLIGENCE

15. Plaintiff, Cheryl Anne Bell, adopts and incorporates by reference paragraphs one (1) through fourteen (14) of the Complaint as if fully set forth herein and further alleges as follows:

16. At all times relevant to this complaint and contrary to acceptable standards of care as practiced by reasonably prudent gynecologists and/or hospitals acting in the same or similar circumstances, the Defendants and their actual and/or apparent agents, servants and/or employees deviated from the standard of care in that they were negligent and breached the duty imposed upon them, including but not limited to the following ways: in failing to perform timely and aggressive treatment of Plaintiff's ectopic pregnancy; failing to admit the Plaintiff overnight for observation and repeat testing; in failing to disclose to Plaintiff the risks of not timely or aggressively treating an ectopic pregnancy; failing to prevent a ruptured ectopic pregnancy by performing timely surgery and/or performing the procedure properly; failing to order tests and incorrectly interpreting tests which were ordered; failing to properly identify the cause of the Plaintiff's condition; and, in being otherwise negligent.

17. Plaintiff rely on the doctrines of res ipsa loquitor and informed consent.

18. As a direct and proximate result of the negligent acts and omissions of the Defendants, the Plaintiff, with no negligence on her part, suffered personal injuries and damages, including an acute respiratory distress syndrome, hypoxia, loss of a fallopian tube, massive internal hemorrhaging into her peritoneum requiring her to undergo radical impatient surgical therapy and suffer permanent disability and scarring. She has experienced conscious pain and suffering and emotional pain and suffering; was caused to incur medical expenses, and he has

6

incurred and will incur future pain, suffering, mental anguish and permanent disability.

19. That each of the damages and injuries sustained by Plaintiff is a direct and proximate result of the aforesaid negligence of the health care providers named herein and/or their actual and/or apparent agents, servants and/or employees as aforesaid, without any negligence of the Plaintiff contributing thereto.

WHEREFORE, Plaintiff, Cheryl Anne Bell, brings this action against the above named Defendants and/or their agents, servants and/or employees and claims compensatory damages in excess of twenty-five thousand dollars ($25,000.00) plus costs, and for such other and further relief as may be necessary and proper.

Respectfully submitted,

_____/s/_____

Robert E. Joyce
Federal Bar #26427
841 E. Fort Avenue
#250
Baltimore, MD 21230
(443) 904-5706

Attorney for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff, Cheryl Anne Bell, by and through undersigned counsel hereby respectfully requests a jury trial in this matter.

Respectfully submitted,

/s/

Robert E. Joyce
Federal Bar #26427
841 E. Fort Avenue
#250
Baltimore, MD 21230
(443) 904-5706

Attorney for Plaintiff